No. 31,446

THE STATE OF KANSAS, *Appellant*, v. A. W. RUSH, *Appellee*.

(26 P. 2d 581.)

Opinion filed November 11, 1933.

*Roland Boynton*, attorney-general, *E. E. Steerman*, assistant attorney-general, *Harry C. Blaker*, county attorney, *Karl V. Shawver*, of .Paola, and *William V. Crosswhite*, of Mound City, for the appellant.

*A. M. Keene* and *Harry W. Fisher*, both of Fort Scott, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Defendant was prosecuted on an information charging embezzlement from A. W. Knisely and charging obtaining money from Knisely by false pretenses. Certain counts of the information were quashed, and a plea in abatement of the prosecution with respect to other counts was sustained. The state appeals.

Before stating the contents of the information, and the proceedings under it, it may be well to sketch composition of the embezzlement statute.

The embezzlement statute of 1868 provided that if any clerk, apprentice or servant of a private person or partnership, or if any officer, agent, clerk or servant of a corporation, should embezzle or convert to his own use, or should take, make away with or secrete, with intent to appropriate to his own use without his employer's

assent, money, goods, rights in action, valuable securities or effects coming into his possession or care by virtue of his employment or office, he should be punished in a prescribed manner. (Gen. Stat. 1868, ch. 31, § 88.) This statute was subsequently amended to include trustees of express trusts, executors and administrators, guardians, public officers, and receivers.

In 1873 the section was amended by adding to it, at the end, a provision that any agent who should neglect or refuse to deliver to his employer, on demand, money, promissory notes, evidences of debt, or other property which came into his possession by virtue of his employment, after deducting fees as attorney, charges as agent, or stipulated commission for making collection of money, should be punished as provided in the section for converting money or other property to his own use. (Laws 1873, ch. 83, § 1.) This part of the statute was modified and elaborated by subsequent amendment. (Laws 1881, ch. 104, § 1.)

In 1899 the initial provision of the statute, "any clerk, apprentice, or servant," etc., was amended to read, "any agent, employee, clerk, apprentice, or servant," etc. (Laws 1899, ch. 139, § 1.)

As a result of these legislative emendations, the embezzlement statute under which the embezzlement counts of the information in this case were drawn became R. S. 21-545, which reads:

"Any agent, employee, clerk, apprentice or servant of any private person, or of any copartnership (except agents, employees, clerks, apprentices or servants within the age of sixteen years), or any trustee of an express trust, or any executor or administrator of any estate, or the guardian of the property of any minor, habitual drunkard, or person of unsound mind, or any officer, clerk, agent, employee or servant of any corporation, joint-stock association or other association, or any person employed in such capacity, or any officer of this state or any county, township, city, board of education or school district or road district therein, or any receiver appointed by any court or judge in this state, who shall embezzle or convert to his own use, or shall take, make way with, or secrete, with intent to convert to his own use, without the assent of his employer, any money, bank bills, treasury notes, goods, rights in action, or valuable security or effects whatsoever, belonging to any such person, copartnership, association, corporation, joint-stock association, estate, minor, habitual drunkard, person of unsound mind, state, county, city, board of education, township or school district, or road district, or the beneficiary of such trust fund, or being a part of the funds, assets or property of such receivership, which shall have come into his possession or under his care by virtue of such employment, office or trust, shall upon conviction thereof be punished in the manner prescribed by law for stealing property of the kind or value of the articles so embezzled, taken or secreted; or if any agent shall, with intent to

defraud, neglect or refuse to deliver to his employer or employers, on demand, any money, bank bills, treasury notes, promissory notes, evidences of debt or other property which may or shall have come into his possession by virtue of such employment, office or trust, after deducting his reasonable or lawful fees, charges or commissions for his services, unless the same shall have been lost by means beyond his control before he had opportunity to make delivery thereof to his employer or employers, or the employer or employers have permitted him to use the same, he shall upon conviction thereof be punished in the manner provided in this section for unlawfully converting such money or other property to his own use."

The first count of the information alleged that Rush was agent of Knisely, with authority to withdraw the sum of $8,000 from the deposit account of Knisely in the La Cygne state bank, for the purpose of investment of that sum by Rush in real-estate notes and mortgages to be taken and held by Rush in the name of and for on behalf of Knisely; that Rush withdrew the money, but instead of investing it, converted it to his own use. The date of the embezzlement was charged as of June, 1918. This count was drawn under the first part of the statute, and did not allege neglect or refusal to deliver on demand after deducting reasonable or lawful fees, charges, and commissions.

Counts 2 to 19, inclusive, charged similar embezzlements on dates extending to April, 1929, of other sums of money withdrawn from Knisely's bank account for purpose of investment, as charged in the first count.

Counts 20 to 38, inclusive, charged the same facts relating to authority and conduct of Rush with respect to the sums of money specified in the first 19 counts, but charged embezzlement by Rush as trustee of an express trust.

Counts 39 to 57, inclusive, charged Rush with obtaining by false pretenses the money specified in previous counts.

Count 58 charged that Rush was agent of Knisely from 1918 to 1929, and that Rush neglected and refused to deliver to Knisely on demand money, promissory notes, securities and mortgages which had come into his possession by virtue of his employment, in the sum of $58,600, after deducting reasonable and lawful fees, charges, and commissions for his services.

Each count of the information alleged concealment of the crime charged until a date within the statute of limitations.

Defendant filed a motion to quash. The motion was sustained with respect to counts 20 to 38, inclusive, charging embezzlement by

Rush as trustee of an express trust, and was denied as to all other counts. A trial followed, at which the state's evidence disclosed the following facts: Rush was cashier of the La Cygne state bank and active manager of its affairs. Knisely was a depositor in the bank. Knisely authorized Rush to withdraw money from Knisely's account and invest it in farm-mortgage loans. Borrowers were to pay expense of closing loans, and Rush was to have a commission on loans, which were to net Knisely six per cent interest. Rush was to use his judgment in passing on loans, and was to see that the land was worth the money and the loans were good loans. At some date not specified it was agreed that on the first days of January and July of each year Rush would furnish to Knisely statements of loans which had been made, and such statements were furnished until the time the bank failed in April, 1929. In some instances Knisely investigated the value of the land covered by mortgages, but he trusted Rush on the subject of values. Knisely did not in fact receive any notes and mortgages except in the case of one small loan. When a loan did not appear on a statement, Knisely supposed Rush had reinvested the money.

At the conclusion of the state's evidence defendant moved the court to require the state to elect on what counts of the information it would rely for conviction. The motion was allowed, and the state elected to rely on the first 19 counts. At the conclusion of all the evidence the court instructed the jury and the cause was submitted to the jury. The jury disagreed and was discharged.

When the case came on for second trial, defendant renewed his motion to quash the first 19 counts of the information, and filed a plea in abatement alleging former jeopardy on counts 39 to 58 inclusive. As indicated, counts 20 to 38 had been eliminated by motion to quash preceding the first trial. The motion to quash the first 19 counts was allowed, and the plea with respect to counts 39 to 58 was sustained, which ended the prosecution.

The occasion for the state's appeal is the ambiguity resulting from the phraseology of the initial and the concluding portions of the statute. By the first provision, if money or securities of a principal come into the hands of an agent by virtue of his employment, he is guilty of embezzlement if he converts them to his own use, or if he takes, makes away with or secretes them with intent to convert to his own use and without consent of the principal. Under the last

provision if money or securities of a principal come into the hands of an agent by virtue of his employment he is not guilty of embezzlement unless, with intent to defraud, he neglects or refuses, on demand, to deliver the money or securities to the principal, less the agent's fees, charges, and commissions. Embezzlement under the first provision in effect constitutes a fraud on the principal, and embezzlement under the second provision in effect constitutes conversion.

The first amendment of the statute of 1868 was made when the first provision of the statute read "clerk, apprentice or servant of any private person or copartnership." In the case of *State v. Bancroft*, 22 Kan. 170, the question was who might be principal. In discussing the amendment by addition in 1873, it was said the amendment was doubtless aimed at lawyers and such other collection agents as are not liable, even in a civil action, until after demand, and the language of the amendment was purposely made general to include all such agents for whomsoever they were acting. The amendment of 1881 expanded the statute so it no longer applied particularly to collection agents, and it has ever since applied generally to other kinds of agents conducting other kinds of transactions for their principals.

The essence of the offense denounced by the concluding portion of the statute is failure or refusal to pay or to deliver to the principal, on demand, money or property coming into the hands of the agent by virtue of his employment. (*State v. Hayes*, 59 Kan. 61, 51 Pac. 905 [1898].) In that case the information for embezzlement charged that apples came into possession of the agent to be sold for the principal, and were sold, but only a part of the proceeds was accounted for. It was held the fact that the agent was indebted to the principal for money not promptly remitted did not constitute a crime, and the information was fatally defective for failure to allege demand and failure or refusal to pay.

In 1894 the case of *State v. Yeiter*, 54 Kan. 277, 38 Pac. 320, was decided. Yeiter was cashier of "The Bank of Ingalls," an unincorporated bank conducted by a partnership composed of two individuals. An examination of the bank disclosed the cashier had appropriated large sums of money belonging to the firm, and he was prosecuted for embezzlement under the concluding portion of the statute. He kept the books, received deposits, paid checks, drew

drafts, paid ordinary expenses of the bank, and in general performed the duties of a bank cashier. He was paid a salary. One of the partners was general manager of the bank, and the cashier was subject to direction and control of the firm and the managing partner. It was held the cashier was the clerk or servant of the firm, within the meaning of the first part of the statute as it then existed, and because the cashier was charged with embezzlement as agent and not as clerk or servant of the copartnership, the information was held to be bad. In the opinion, direction and control of the cashier by the firm or its managing partner were stressed as indicating service of the kind contemplated by the first part of the statute.

There is no line which so sharply divides the relation of master and servant from the relation of principal and agent that the distinction will be perfectly clear in all cases. In fact, a master is a species of principal, and a servant is a species of agent. (Restatement, Agency, § 2, comment a.) Perhaps because of the decision in the Yeiter case, the first part of the embezzlement statute was amended to read "agent, employee, clerk, apprentice, or servant," the intention being to include persons who, although they do not have power to alter legal relations to the extent that the agents mentioned in the concluding portion of the statute possess, still have a modicum of independence in the conduct of the employer's affairs. Interpreted in this manner, the first and the concluding portions of the statute do not overlap or conflict, and in considering an information for embezzlement, the facts of the relationship, and not merely the names which may apply to it, are controlling.

If it were permissible to interpret the first 19 counts of the information by the evidence offered in support of them at the abortive trial, Rush was indubitably an agent in the sense of the concluding portion of the statute, and the evidence would not have sustained conviction without proof of demand and neglect or refusal to pay or deliver. The money which the agent withdrew from the principal's account was not to be handled in any routine fashion, as the money received by the city officer in the case of *State v. Ricksecker*, 73 Kan. 495, 85 Pac. 547. The withdrawals themselves were pursuant to a comprehensive authority to be exercised according to the agent's judgment and discretion, the principal being interested only in the results of the transactions. Leaving the evidence at one side, the first 19 counts themselves disclosed agency of a·type wholly

different from that contemplated by the first part of the statute, and those counts were properly quashed.

The plea in abatement was properly sustained. Defendant pleaded to the counts to which the plea in abatement was directed, a jury was empaneled, and the state introduced its evidence in support of them. Defendant was placed in jeopardy, and election of the state to rely for conviction on other counts ended prosecution on the counts abandoned by the election. The state cites cases relating to election between transactions proved to support the charge contained in a count. In such cases the state may, at a subsequent trial, prove and rely on any transaction disclosed by the evidence at the first trial, and the rule is the same whether the charge be of a misdemeanor or of a felony. (*State v. Hibbard,* 76 Kan. 376, 378, 92 Pac. 304.) This rule has no application to election between counts. The election withdraws the counts from the information as if a *nolle prosequi* had been entered, and after jeopardy has attached they cannot form the basis of further prosecution. The election to proceed on one count is even held to be equivalent to a verdict of not guilty on the other counts. (31 C. J. 792, § 363.)

The judgment of the district court is affirmed.

HUTCHISON, J., not sitting.