No. 31,887

In the Matter of the Petition of RICHARD E. BROWN for a Writ of Habeas Corpus.

(32 P. 2d 507.)

Opinion filed May 5, 1934.

*C. A. Spencer, J. H. Jenson,* both of Oakley, and *Guy L. Hursh,* of Topeka, for the petitioner.

*Roland Boynton,* attorney-general, *Everett E. Steerman,* assistant attorney-general, and *Herbert Hampton,* county attorney, for the respondent; *W. L. Sayers,* of Hill City, of counsel.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in habeas corpus wherein petitioner seeks his release from the custody of the sheriff of Gove county who holds him by virtue of two commitments. As the commitments grow out of one chain of circumstances, the facts, which are not in dispute, will be chronologically noted, and the contentions of the petitioner and the respondent thereafter considered.

After proper preliminary proceedings, petitioner went on trial by a jury in the district court of Gove county on Monday, November 21, 1933, on an information containing two counts. The first count charged:

"That within two years last prior to May 25, 1933, in said county of Gove and state of Kansas, one Richard E. Brown did then and there unlawfully, feloniously and carnally commit the crime of rape," etc.,

and the second count charged: "That at the county of Gove, in the state of Kansas, within two years next prior to May 25, 1933, the said Richard E. Brown did then and there commit" the crime against nature. Evidence was offered by the state as to numerous acts constituting both crimes charged, and on defendant's motion the state

elected to rely for conviction under the first count upon occurrences on or about March 18, 1932, and to rely for conviction under the second count upon occurrences on or about December 1, 1933. The trial continued from Monday throughout the week, and the case went to the jury late Saturday, when it retired to consider its verdict. The district judge remained in Gove, and on Sunday morning, November 26, about 8 o'clock, the court called the jury into the courtroom and inquired whether they had agreed on a verdict, and being informed they had not, the judge informed the jury that he was going to his home in Wakeeney and would not return until the next morning; that if they should agree upon a verdict they should obtain an envelope from the bailiff, seal up the verdict in the envelope and hand it to the bailiff, who was directed to hand it to the clerk, and that the jury might then separate and go home and return to court the next morning. The court reporter was not present, and just what the judge of the court said is determinable only from his statement. In that statement the judge states he has no recollection as to whether on Sunday morning he admonished the jury in case they separated to make no statement as to what kind of verdict they had returned, but he does not believe he had the matter in mind nor did he make such admonition. On the Monday morning, November 27, the court convened with all jurors present except one and they reported they had agreed on a verdict about 5 p. m., November 26, and had sealed up their verdict and handed it to the bailiff in accordance with the court's instructions. Some colloquy then occurred between court and counsel and defendant's counsel stated:

"The defendant is willing to waive the absence of the juror who seems to be indisposed."

The court replied:

"I suppose that could be taken up later. I think now you had better go into the question of the juror's ability to be here."

Thereafter testimony was taken with respect to the ability of the absent juror to be present, and further testimony was taken as to just what had transpired on Sunday. The court then continued the matter until the following Friday, stating the continuance was for two reasons, one to see whether the absent juror could be present, the other to give the parties time to investigate the law applicable to the situation. The court then stated to the jury he could not receive a verdict without twelve men being present; that he was

going to continue the case and hoped the absent juror would be able to come to court and:

"I am going to excuse you in this case until next Friday morning, but I wouldn't want you to leave because there might be another case to try to the jury, but I want to say that between now and Friday morning it is the desire of the court you shall not reveal what your verdict was, or what verdict has been signed, and not reveal to anybody the state of your deliberation in any way. Just keep that as secret as you possibly can. We are faced here with an extraordinary situation. I might tell you one reason why it is so necessary that you do not reveal the state of your deliberations, is that this verdict is under your control until it is returned into court by the twelve jurymen. That is, any of you can change your mind between now and Friday morning, and that is the reason I do not want you to say a word to anybody about what has been done and do not allow anybody to talk to you about it. Nobody has any business to talk to you about it and if anybody does I would like to have you report it to the court. If Mr. Siemers does not recover so as to be able to come to court I suppose this case will have to be tried over again. Maybe it will anyway under the circumstances that exist here. I think with that statement and with that admonition you may be excused, but do not leave town until we see whether this other case is settled."

On Friday all of the jurors were present and the court directed the foreman as follows:

"Mr. Gallagher, I wish you would take the jurymen into the jury room and ascertain whether they are all, at this time, agreed upon a verdict and then bring them back."

The jury returned and reported they were not agreed. The court then directed them to retire and consider further. Later they reported they could not agree and were discharged.

As a result of discussion between court and counsel it was decided to preserve the sealed verdicts and to have them in the hands of the clerk subject to instructions of the trial court or of this court. The cause was continued until the next term.

Following the above, the petitioner was rearrested on a warrant charging statutory rape on the same person named in the above proceedings on or about five different designated days all prior to May 25, 1933, one of them being March 18, 1932, and on January 23, 1934, a preliminary hearing was had and he was bound over for trial in the district court.

It may be remarked here that, although the record does not show it affirmatively, apparently some of the jurors, after returning the sealed verdict and before coming into court on Monday morning, disclosed the nature of the verdict, and petitioner's application for

the writ of habeas corpus is on the assumption the sealed verdicts were verdicts finding the defendant not guilty. We have sent for and opened the sealed verdicts, and they are to that effect.

The petitioner argues that the sealed verdict should have been received, that he had a right to waive the presence of one of the twelve jurors, and that under the verdict he has been acquitted and is entitled to be discharged from custody of the sheriff under the first commitment. He further argues that as to the offenses charged in the warrant under which he was bound over on January 23, 1934, he was in jeopardy for the same offense at the first trial, and entitled to be discharged for that reason.

We will consider the matter of the sealed verdict first. The question whether the sealed verdict should have been received in this case perhaps involves two propositions, one the right to waive the attendance of a full jury of twelve, and the other the right to waive full compliance with statutory requirements for return of a verdict.

In *State v. Simons*, 61 Kan. 752, 60 Pac. 1052 (decided in 1900), it was held that—

"The assent of a defendant upon trial on a charge of felony to the discharge of one of the jurors, with an agreement to submit to a verdict by the remaining number, is ineffectual to bind him, and in such case in the event of an adverse verdict, he is entitled to a retrial, notwithstanding his agreement." (Syl.)

And, in the opinion, referring to an annotation in 43 L. R. A. 33, it is said:

"In these annotations the entire list of decisions are digested and classified. It is believed that all, with the exception, perhaps, of those of Iowa, are to the effect that the consent of one indicted for felony to a trial by less than a jury of twelve is ineffectual to bind him to the verdict rendered." (p. 757.)

The case does not hold the converse: that if he were acquitted by a jury of less than twelve, he could be retried.

Since the Simons case was decided, however, the question of a trial by a jury of less than twelve received the consideration of the supreme court of the United States in *Patton v. United States*, 281 U. S. 276, 74 L. Ed. 854, 50 Sup. Ct. Rep. 253, 70 A. L. R. 263, decided in 1930, in which it was held that:

"The constitutional right of one on trial for crime to a jury of twelve persons may be waived, even in the case of serious offenses, either altogether, or by consenting to a trial by a less number than twelve." (70 A. L. R. 263, headnote 1.)

In a note to the last case in 70 A. L. R. 279 *et seq.*, it is said that while the greater number of cases seem to support the rule of the Simon case, there are a number of cases holding that in the absence of specific statutory or constitutional provisions prohibiting the right, a person accused of a felony can waive his right to a trial before twelve jurors and consent to a trial before a less number. But it is not necessary to a decision of this case that the precise question of trial by a jury of less than twelve be decided, for under the facts here, the trial was by a full jury and only the return of their verdict by a less number is involved. So far as that one matter is concerned, we are of opinion that the defendant had the right to waive the presence of one of the jurors if and when the verdict, agreed upon by a full jury of twelve, was returned into court, unless it be held that the provisions of our statutes prevent. The provisions applicable here are as follows:

"The proceedings prescribed by law in civil cases in respect to the impaneling of jurors, the keeping them together, and the manner of rendering their verdict, shall be had upon trials on indictments and informations for criminal offenses, except in cases otherwise provided by statute." (R. S. 62-1412.)

"When the jury have agreed upon their verdict they must be conducted into court by the officer having them in charge. Their names must then be called, and if all appear their verdict must be rendered in open court. If all do not appear, the rest must be discharged without giving a verdict, and the cause must be tried again at the same or next term." (R. S. 62-1501.)

"When the jury have agreed upon their verdict they must be conducted into court, their names called by the clerk, and their verdict rendered by their foreman. When the verdict is announced, either party may require the jury to be polled, which is done by the clerk or the court asking each juror if it is his verdict. If any one answers in the negative, the jury must again be sent out for further deliberation." (R. S. 60-2916.)

"The verdict shall be written, signed by the foreman, and read by the clerk to the jury, and the inquiry made whether it is their verdict. If any juror disagrees, the jury must be sent out again; but if no disagreement be expressed, and neither party requires the jury to be polled, the verdict is complete, and the jury discharged from the case. If, however, the verdict be defective in form only, the same may, with the assent of the jury, before they are discharged, be corrected by the court." (R. S. 60-2917.)

It will be noted that the above statutes make no specific provision for a so-called sealed verdict, nor is there any other provision in either the criminal or civil codes which refers thereto. No criminal case decided by this court has been cited in the briefs, nor has our search disclosed any, where, under similar circumstances, the force and effect of a sealed verdict has been considered.

In *Bishop v. Mugler*, 33 Kan. 145, 5 Pac. 756, it was said:

"The determination of a jury, although formally stated in a verdict, and signed and sealed, is not final, but remains within the control of the jury, and is subject to any alteration or amendment by the jurors until it is actually rendered in court and recorded; and up to that time any member of the jury is at liberty to withdraw his consent from a verdict previously agreed upon.

"A sealed verdict should be presented by the full jury in open court, so that the parties may avail themselves of the right of polling the jury; and until the verdict is regularly received and filed, it is without force or validity.

"A verdict returned into court by a less number of jurors than constituted the jury is not effectual or legal, and its reception cannot be compelled by mandamus." (Syl. ¶¶ 1, 2, 3.)

In *State v. Keehn*, 85 Kan. 765, 118 Pac. 851, although not involving the precise question here involved, the court, at length, discussed the question of the return of a verdict in the absence of the judge, it having been agreed in open court in the presence of the defendant and between counsel for him and the state that the judge might go to his home and if the jury arrived at a verdict it should be received by a designated attorney. The verdict was so received, and it was then contended that in the absence of the judge there was no court, and that the defendant could not by agreement waive the lawful constitution of the tribunal appointed to conduct criminal proceedings. Referring to what is now R. S. 60-2916, it was said:

"Interpreting the statute quoted above in the light of this principle, it is not necessary to adhere strictly to the letter of the statute without regard to its spirit and purpose. Calling the names of the jurors, who have all the time been in the custody of a sworn officer, to see that no one has escaped, is reminiscent of the days when, if the jury had not agreed before the judge left town, he might carry them around the circuit with him in a cart. (3 Blackstone, Com. p. 376.) If, after the jury has come into court with its verdict, counsel for the defendant should announce that he is satisfied the jurors are all present and the roll call should then be omitted, the statute would be violated, but who would contend that the verdict was vitiated? Consistently with the principle, this court decided that a verdict in a capital case, not received in open court but received some hours after an adjournment had been taken until the next day, was valid. The judge, the officers of the court, the defendant and the attorneys for both sides were present, and the proceedings took the ordinary course, without objection. The court said:

" 'The statute, section 238, code of criminal procedure, provides that a verdict must be rendered in open court. Clearly there was a technical departure from this rule. But section 275, which prescribes the grounds for a new trial, contains nothing which would reach a question like this; and section 293 provides that "On an appeal, the court must give judgment without regard

to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." Under these two provisions, we think, the error is not one which will justify a reversal of the judgment. Every substantial right of the defendant was secured.' (*The State v. McKinney,* 31 Kan. 570, 584, 3 Pac. 356.)

"In the case just cited the court, after considering the authorities to the contrary, adopted the view expressed by Bishop (Crim. Proc., 3d Ed., § 1001) and held that receiving a verdict is not a judicial act. To that view the court adheres, and consequently the question of a delegation of judicial authority is not involved. Whatever right the defendant may have had to invoke judicial action in connection with the reception of the verdict, should occasion arise, he clearly waived. He might have waived attendance at the return of the verdict altogether (*The State v. Way,* 76 Kan. 928, 93 Pac. 159), and in this instance, while the right to be present was not waived, the right to call upon the court for any judicial purpose involved in the proceeding was waived as effectually as if the defendant had chosen to absent himself." (p. 798.)

It is apparent that there must be an essential difference in the return of verdicts in civil and criminal cases. In a civil case the parties are on a parity; in a criminal case the defendant is hedged about with constitutional and statutory protection which the state does not enjoy. The defendant is entitled to demand strict compliance with every requirement in his favor, but, as has been shown, he has power to waive at least some of those requirements. It is somewhat difficult here to state with certainty just what the jury was instructed to do, but it seems reasonably clear that they were told if they reached a verdict they should seal it, hand it to the bailiff and then disperse. They were not cautioned nor admonished in any manner. In an annotation in 66 A. L. R. 560 it is said:

"It has been generally held that, where the jury in a civil case has sealed its verdict, separated, and come into court upon its reconvening to return their verdict, the power of the jury over the verdict has not yet ceased, and they may be allowed to correct or amend it."

And see cases cited. And in the same annotation, at page 570, it is further stated:

"It seems to be generally held that, where the jury in a criminal trial have sealed their verdict and separated, they cannot, upon returning it into court, amend or correct it in a matter of substance." (See cases cited.)

We are of the view that the defendant had the right to waive the presence of the twelfth juror on Monday morning when the verdict was returned into court, and likewise of the view that under the circumstances the jury, having arrived at and sealed their verdict and delivered it to the bailiff and the bailiff to the clerk and then dispersed according to the court's instructions, no longer had the

power to reconsider its verdict and alter or correct it in a matter of substance.

The verdict should have been received. Under it the petitioner is acquitted and is entitled to his discharge.

Has the petitioner been in former jeopardy as to the offenses charged in the warrant on which he was bound over to the district court on January 23, 1934?

The last sentence of section 10 of the bill of rights of our constitution recites: "No person shall be a witness against himself, or be twice put in jeopardy for the same offense." A similar provision is included in the fifth amendment to the constitution of the United States. The question divides itself into two parts: what is former jeopardy, and what is the same offense. Jeopardy is defined in 16 C. J. 232 as follows:

" 'Jeopardy' is used to designate the danger of conviction and punishment which the defendant in a criminal action incurs when a valid indictment has been found or a valid information or complaint presented and a petit jury has been impaneled and sworn to try the case and to give a verdict."

And the elements of former jeopardy are said to be:

"A defendant in a criminal prosecution is in legal jeopardy when he has been placed upon trial under the following conditions: (1) upon a valid indictment or information; (2) before a court of competent jurisdiction; (3) after he has been arraigned; (4) after he had pleaded to the indictment or information; and (5) when a competent jury have been impaneled and sworn." (16 C. J. 237.)

As to when jeopardy attaches this court has said in *State v. Brick Co.*, 117 Kan. 192, 230 Pac. 1035:

"An accused is in legal jeopardy when a trial is begun before a court of competent jurisdiction upon an indictment or information which is sufficient to sustain a conviction, and when jeopardy attaches the discontinuance of the trial without the consent of the accused or an absolute necessity is a bar to another prosecution for the same offense a second time." (Syl. ¶ 1.)

And see, also, 8 R. C. L. 138.

It appears that prior to January 23, 1934, defendant, having been arraigned and having pleaded, was tried before a duly impaneled jury on a proper information charging statutory rape within two years prior to May 25, 1933, and therefore that he has been in jeopardy as to the offenses charged in the warrant upon which he was bound over on January 23, 1934, if they be held to be the same offenses for which he was tried. Attention is directed to the information quoted above and especially to the fact that no date of

the offense is charged further than "that within two years last prior to May 25, 1933," the defendant committed the crime of .statutory rape. Subsequent to trial on that information he was arrested on a complaint charging statutory rape on the same person named in the first information in five counts, the dates being March 18, 1932, April 9, 1932, July ——, 1932, September ——, 1932, and December 31, 1932, and upon preliminary examination was bound over to the district court.

Were these offenses included in the information on which he was tried? In the agreed statement of facts it is stipulated that at the first trial numerous acts and transactions were testified about, any one of which would have constituted the offense charged in the first count of the information. On defendant's motion the state elected to rely upon the occurrences of March 18, 1932, and as to the charge of that date, there is no doubt that defendant has been in jeopardy for that particular offense and cannot be tried again.

16 C. J. 265 states the rule as to identity of offenses as follows:

"A test almost universally applied to determine the identity of the offenses is to ascertain the identity, in character and effect, of the evidence in both cases. If the evidence which is necessary to support the second indictment was admissible under the former, was related to the same crime, and was sufficient if believed by the jury to have warranted a conviction of that crime, the offenses are identical, and a plea of former conviction or acquittal is a bar. *But if the facts which will convict on the second prosecution would not necessarily have convicted on the first, then the first will not be a bar to the second, although the offenses charged may have been committed in the same transaction,*" etc. (Italics ours.)

And as to the periods covered by the prosecution, the same authority says:

"When time is not of the essence of an offense, the state is not confined in its proof to any specific date, but it may be proved at any time within the statute of limitations, and therefore in such cases, a conviction or an acquittal will usually operate as a bar to a subsequent prosecution for this offense at any time prior to the filing of the information or indictment. But this does not mean that one convicted of crime is immune thenceforth as to any other charge of the same nature merely because the crime was committed prior to the return of that indictment. The burden is on defendant to plead and prove that the former conviction or acquittal was for the same offense. It has been held that a prior prosecution is a bar to a further prosecution for such offenses only as the prosecution proved or attempted to prove on the prior trial. . . . *Moreover, where the state, although permitted to prove several similar offenses, is required to and does point out the specific offense for which it seeks a conviction, and the jury is required to acquit defendant if they do not find that*

*he has committed that particular offense, the first prosecution is not a bar to the subsequent one."* (Italics ours.) (p. 267.)

Attention is here again called to the fact that the first information specified no particular date, and that evidence of numerous occurrences was offered and that the state, on defendant's motion, elected to rely on occurrences of March 18, 1932. Under the generally accepted view, evidence of various occurrences was properly received, and the court's requiring the state to elect was proper.

In *State v. Crimmins*, 31 Kan. 376, 379, 2 Pac. 574, this court said:

"We suppose that upon a criminal trial, where the state has offered evidence tending to prove several distinct and substantive offenses, it is the duty of the court, upon the motion of the defendant, to require the prosecutor, before the defendant is put upon his defense, to elect upon which particular transaction the prosecutor will rely for a conviction. (*State v. Schweiter*, 27 Kan. 500, 512.) Any other rule would often work injustice and hardship to the defendant. If any other rule were adopted, the defendant might be charged with the commission of one offense, tried for fifty, compelled to make defense to all, be found guilty of an offense for which he had made no preparation and had scarcely thought of, and found guilty of an offense which was really not intended to be charged against him; and in the end, when found guilty, he might not have the slightest idea as to which of the offenses he was found guilty. Also, if evidence was introduced tending to prove twelve or more different offenses, the jury might find him guilty without any two of the jurors agreeing that he was guilty of any particular one of such offenses. One juror might believe that he was guilty of one offense, another juror of another, and so on with respect to all the jurors and all the offenses, each juror believing that the defendant was guilty of some one of the offenses which the evidence possibly tended to prove, but no two jurors agreeing that he was guilty of the same identical offense. But while the prosecutor is required to elect in such cases, he is required to elect only in furtherance of justice; and the rule is never carried to the extent of working injustice. A court in such cases has some discretion; and it should exercise that discretion in the interest of justice." (p. 379.)

The record does not disclose the court's instructions, but we may assume that the jury was instructed that if they did not believe the offense was committed on the day elected that they should acquit, and an instruction that evidence of other occurrences was not proof of guilt, but merely of course of conduct, motive, etc., would have been proper.

The petitioner relies principally on *State v. Price*, 127 Ia. 301, 103 N. W. 195, and *State v. Dye*, 81 Wash. 388, 142 Pac. 873. It may be said that in a general way they support his contention that he is to be charged a second time with the same offense for which he

was charged. In *State v. Price*, supra, the facts were that defendant was twice indicted at the same term, one indictment being for rape, the other for incest. The rape charge was tried first and evidence of different occurrences was received. The state elected to rely on occurrences of October 28. A verdict of not guilty followed. Thereupon he was tried for incest and pleaded his former acquittal of the charge of rape as a bar, which the court denied. Evidence of various acts was received and the state elected to rely on acts of November 12, and the court instructed that defendant must be convicted, if at all, for an act which took place on and after November 12. From a conviction defendant appealed, and the court, in disposing of the appeal, said:

"An acquittal under an indictment charging rape on a female under the age of consent is a bar to a subsequent proceeding under an indictment charging incest with the same female at the same time, although in the latter prosecution the state elects to reply (rely) upon an act committed on a different date from that relied on in the prosecution for rape." (Syl.)

"These general rules are practically conceded by the state, but counsel contend that, as the state elected in one case to rely upon an act of intercourse said to have been committed on October 28th and in the other upon an act committed on November 12th, they do not apply, and are not controlling. This proposition is unsound. When the jury was sworn in the rape case, defendant was in jeopardy as to every act of intercourse committed by him with the prosecutrix during the period covered by the indictment; and upon a verdict of not guilty being returned the state could not have reindicted and tried him for an act of intercourse committed at some time within the period covered by the indictment, for which the state did not elect to prosecute. This is fully established by the authorities already cited. If the acts of intercourse with the prosecutrix were entirely distinct and separate offenses, and could not have been proved under the original charge of rape, there would be much force in the position taken by the state. But in these sexual offenses it is competent for the state to prove any and all acts of intercourse between the parties during the time covered by the indictment at least; and the defendant, for his own protection, and to enable him to make his defense intelligently, may require the state to elect upon which act it will rely. (*State v. Hurd*, supra.) But when election is required all the testimony as to other acts remains in the case, and as said in *United States v. Harmison*, Fed. Cas. No. 15,308 (3 Sawy. 556), the test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. That defendant was in jeopardy as to every act of sexual intercourse between him and the prosecutrix covered by the indictment for rape is very clear. The defendant may waive his right to move for an election on the part of the state, and if he does so, there is no doubt of the rule here announced. When he does move, and the election is made, he is nevertheless compelled to or may meet all the acts put in evidence by the state. In many

cases the election is said to rest in the sound discretion of the trial court, and, when made, it is for the benefit of the defendant to enable him to properly meet the charge; and, as said in the Hurd case, *supra:* 'There is a manifest difference between cases in which the evidence as to other offenses is properly admitted (as in this case) as bearing upon the particular offense and where it is not admissible.' In rape and other like cases an election may be required, but all the testimony as to other acts of sexual intercourse remains in the case, having probative force, and the effect is that the defendant is in jeopardy as to each. The state, in electing to prosecute for the one, in legal effect waives all the others, save that the others remain in evidence as a part of the state's case. (*State v. Smalley,* 50 Vt. 738.) This is undoubtedly the rule as to continuing offenses; and, we think, it also applies where the offenses are of the same nature or species, so that the evidence which proves the one would also prove the other. (*Holt v. State,* 38 Ga. 187.) In *Commonwealth v. Arner,* 149 Pa. 35 (24 Atl. Rep. 83), it is expressly held that one who has been convicted of fornication and bastardy cannot thereafter be tried for rape for the same act. (See, also, *Lynch v. Com.* 18 Ky. 145 [35 S. W. Rep. 264], and *Bryant v. State* [Ark.] 81 S. W. Rep. 234.)" (p. 306.)

The Iowa court seems to have placed its decision, to a considerable extent, on statutory grounds, for the opinion continues:

"But, whatever the rule at common law and in other jurisdictions, the matter is settled for this state by statute. Code, section 5405, provides that a verdict of not guilty imports an acquittal on every material allegation in the indictment." (p. 308.)

Two of the justices dissented.

It is here to be remarked that our court, under a very similar state of facts, held in *State v. Learned,* 73 Kan. 328, 85 Pac. 293, that—

"A plea in bar of a prosecution for incest which sets forth that the defendant has been tried for, and acquitted of, the crime of statutory rape upon the same woman, for the same act, is not a good plea." (Syl.)

In *State v. Dye,* supra, the following facts appear: Defendant went to trial on an information charging rape on a female child under fifteen years of age. A jury was impaneled and sworn and the state's evidence received. Defendant moved for a dismissal on the ground of insufficient evidence, and his motion was allowed. The information charged that the offense occurred within three years immediately preceding the filing of the information. Later he was tried on another information charging that on a day certain (and within the three-year period) he forcibly raped the same child. To this information defendant filed a plea in bar which was denied. On conviction, he appealed. In disposing of the case the court held the same offense was charged; that the charge of force in the last information made no difference, for the same evidence which sup-

ported the verdict would have supported the first information. The court quotes approvingly from the Iowa case, and holds that the first judgment of acquittal was a bar to a further prosecution.

The above cases go to the extreme length in support of defendant's view. In *State v. Healy,* 136 Minn. 264, 161 N. W. 590, L. R. A. 1917D 726, a very different conclusion was reached. In that case defendant went to trial on three indictments charging statutory rape on April 5, 1913, January 16, 1914, and July 16, 1914. At the trial the evidence went primarily to prove an offense on January 16, 1914, and then proceeded to show frequent acts prior thereto. The defendant moved to require the state to elect upon which offense it would rely and it elected January 16, 1914. A verdict of acquittal followed. Defendant was reindicted, charged with offenses on April 5, 1913, and July 16, 1914, and interposed a plea of former acquittal which was disallowed and he was convicted and appealed. In that case, as in the case at bar, the defendant (petitioner here) relied upon *State v. Price,* 127 Ia. 301, 103 N. W. 195, and *State v. Dye,* 81 Wash. 388, 142 Pac. 873, and, in discussing them, the court said:

"The Price case supports his contention. . . . The court held that the acquittal at the first trial barred the second prosecution; but two of the judges vigorously dissented. In the dissenting opinion Justice McClain states (127 Iowa 313): 'The rule which I think should be adopted is that the second prosecution will be barred only where the transaction for which defendant has once been prosecuted is the same as that for which he is proceeded against on the second prosecution, or at least involves the same acts. That identity of transactions as the controlling consideration is the rule of the greater number of cases, especially of the modern cases.' In the recent case of *State v. Mc-Aninch,* 172 Iowa 96, 154 N. W. 399, the Iowa court limits the Price case materially, and quotes the above rule from the dissenting opinion of Justice McClain with apparent approval. Unless limited so as to bring it within the Iowa statute declaring the effect to be given to an acquittal, the Price case seems opposed to the weight of authority in holding that an acquittal of statutory rape is a bar to a prosecution for incest. See *State v. Learned,* 73 Kan. 328, 85 Pac. 293.

"In the Dye case . . . the court held the first prosecution a bar to the second. So far as appears no specific offense was pointed out at the first trial, either by election or otherwise, and the state was permitted to prove any and all offenses which took place within three years immediately preceding September 3, 1912, and could have procured a conviction if it had succeeded in establishing any of them. The second prosecution was for a specific offense alleged to have taken place within this period. This case seems to be governed by the principle stated by Chitty; and is an authority for the well-established rule that, where the state is permitted to prove any and all similar offenses which have taken place within a designated period, without electing upon which

offense it will rely, and can secure a conviction if the jury find that the defendant has committed any one of such offenses, an acquittal is a bar to a second prosecution for any specific offense committed within the designated period. (*State v. Nunnelly*, 43 Ark. 68; *State v. Blahut*, 48 Ark. 34, 2 S. W. 190; *Deshazo v. State*, 65 Ark. 38, 44 S. W. 453; *Bryant v. State*, 72 Ark. 419, 81 S. W. 234; *State v. Stephens*, 70 Mo. App. 554; *State v. Nutt*, 28 Vt. 598; *Chesapeake & O. Ry. Co. v. Commonwealth*, 88 Ky. 368, 11 S. W. 87; *Pope v. State*, 63 Miss. 53; also the exhaustive note in 92 Am. St. Rep. pages 89 to 159.)

"In such cases the verdict of not guilty in the first prosecution necessarily found that the defendant had not committed the offense charged in the second prosecution. But where the state, although permitted to prove several similar offenses, is required to and does point out the specific offense for which it seeks a conviction, and the jury is required to acquit the defendant unless they find that he had committed that particular offense, a verdict of not guilty is not a finding that the defendant had not committed other similar offenses, and is not a bar to another prosecution for another and different, but similar offense. (*State v. Shafer*, 20 Kan. 226; *State v. Kuhuke*, 30 Kan. 402, 2 Pac. 689; *State v. Learned*, 73 Kan. 328, 85 Pac. 293; *State v. Blahut*, 48 Ark. 34, 2 S. W. 190; *Deshazo v. State*, 65 Ark. 38, 44 S. W. 453; *People v. Williams*, 133 Cal. 165, 65 Pac. 332; *Fehr v. State*, 36 Tex. Crim. 93, 35 S. W. 381, 650; *Chesapeake & O. Ry. Co. v. Commonwealth*, 88 Ky. 368, 11 S. W. 87; *People v. Sinell*, 131 N. Y. 571, 30 N. E. 47; *State v. Stephens*, 70 Mo. App. 554; *State v. Howe*, 27 Ore. 138, 44 Pac. 672; *State v. Ainsworth*, 11 Vt. 91; *State v. Oakes*, 119 Mo. 792, 202 Mo. 86, 100 S. W. 434, 119 Am. St. 792; *Pope v. State*, 63 Miss. 53; also cases cited in note in 92 Am. St. Rep. pages 89-159, especially those cited on page 155.)" (pp. 269, 270.)

In *State v. Patterson*, 126 Kan. 770, 271 Pac. 390, while the facts differ materially from those in the instant case, the argument was made that defendant was compelled to meet evidence of any offense within the statutory period, and it was there said:

"Appellant contends that the court erred in overruling his plea in abatement. This plea averred that defendant had been once in jeopardy for this offense, having in another case (No. 11,325) been charged and tried on May 19, 1927, for the offense of possession of intoxicating liquor, and found not guilty. It is further averred that the evidence in both cases is identical. An answer denied the allegations in the plea. The evidence relating to it disclosed that on May 18, 1927, an information was filed in the district court charging Porter Patterson with the offense of the unlawful possession of intoxicating liquor. He was tried on that information on May 19 to a jury, with the result that there was a verdict of not guilty. . . . It is conceded that the evidence offered in that case related to a time, place and the circumstances other than in July, 1926. The trial court denied this plea, and appellant complains of that ruling. In support of his complaint he makes the ingenious and somewhat plausible argument that at the trial of the case in May, 1927, the state could have proved any unlawful possession of intoxicating liquor by defendant at any time within two years prior to the filing of the

information in that case, citing *State v. Brooks*, 33 Kan. 708, 7 Pac. 591, and allied cases; that defendant in that case was compelled to be prepared to meet evidence relating to any claim on behalf of the state that he had unlawful possession of intoxicating liquor at any time within such two years; that in legal contemplation the defendant was tried for any and every offense of the unlawful possession of intoxicating liquor which the state had, or could have, against him within such two years, and that the jury's verdict of not guilty in that case was a decision upon this question and a finding that the defendant had not had unlawful possession of intoxicating liquor at any time within two years prior to the filing of the information in that case. Some authorities, among them *State v. Price*, 127 Ia. 301, are cited in support of this view. Many years ago this court had occasion to consider this identical question in *State v. Shafer*, 20 Kan. 226, and in *State v. Kuhuke*, 30 Kan. 462, 2 Pac. 689, where the specific question here presented was decided against appellant's contention. In such a situation it seems the true rule is that in a plea of former acquittal to an offense it must be shown that the prior case related to the same offense charged or relied upon in the case on trial. See further on this point 16 C. J. 267, and cases collected in the note, 45 L. R. A., n. s., 977." (pp. 774, 775.)

Petitioner argues that if the charge had been made up of several separate counts and the state had elected to proceed on one count and abandon the others, the defendant would have been in jeopardy and the abandonment of those counts would have the effect of acquittal thereon. In discussing abatement by reason of election to stand on certain counts of an information, this court, very recently, said in *State v. Rush*, 138 Kan. 465, 471, 26 P. 2d 581:

"The plea in abatement was properly sustained. Defendant pleaded to the counts to which the plea in abatement was directed, a jury was empaneled, and the state introduced its evidence in support of them. Defendant was placed in jeopardy, and election of the state to rely for conviction on other counts ended prosecution on the counts abandoned by the election. The state cites cases relating to election between transactions proved to support the charge contained in a count. In such cases the state may, at a subsequent trial, prove and rely on any transaction disclosed by the evidence at the first trial, and the rule is the same whether the charge be of a misdemeanor or of a felony. (*State v. Hibbard*, 76 Kan. 376, 378, 92 Pac. 304.) This rule has no application to election between counts. The election withdraws the counts from the information as if a *nolle prosequi* had been entered, and, after jeopardy has attached, they cannot form the basis of further prosecution. The election to proceed on one count is even held to be equivalent to a verdict of not guilty on the other counts. (31 C. J. 792, § 363.)"

Here it cannot be said there was abandonment, for had there been a new trial under the authority of *State v. Hibbard*, cited above, the state could have relied either on the same date it origi-

nally relied on or on any other date within the statutory period. We recognize the plausibility of the argument that at the trial on an information such as we have here, the state has the right to offer evidence as to many occurrences of similar nature between the same parties and that it might be said that the defendant, until an election is made, is being tried for each of them, and is therefore in jeopardy, but, if the defendant did not require an election, it would seem that if the occurrences were numerous, it would be proper for the court to require one to be made by the state. Under such circumstances, it does not seem very material that the information charged the offense occurred "within two years" rather than to charge a specific date.

In our opinion the better rule, and the one supported by the greater weight of authority in determining what is the "same offense" under the constitutional provision that no person shall be "twice put in jeopardy for the same offense," is that where the state, in an effort to prove one count of an information charging rape, is permitted to offer evidence of similar acts with the same person within the statutory period, and upon motion by the defendant is required to elect on what particular offense it relies, that a conviction or acquittal resulting thereafter in that particular trial cannot be urged in bar against a prosecution for similar acts occurring at other times in the same period between the same persons.

From what has been said it follows that the petitioner is not entitled to his discharge from the custody of the sheriff on account of his being bound over to the district court on January 23, 1934.

It is therefore ordered that as to the commitment under which the petitioner is held for a new trial by reason of the failure of the court to receive the verdict following the trial commenced on November 21, 1933, the writ of habeas corpus is allowed, and that as to the commitment on which he is being held by virtue of having been bound over to the district court on January 23, 1934, the writ of habeas corpus is denied.

SMITH, J. (dissenting) : I dissent from the fourth paragraph of the syllabus and the corresponding portion of the opinion. Briefly, my views may be stated as follows: The third syllabus of this opinion states the correct rule. It is as follows:

"An accused is in jeopardy, as that word is used in section 10 of the bill of rights of the constitution, when he is placed on trial in a court of competent

jurisdiction by a duly impaneled jury upon a legally sufficient information on which he has been duly arraigned and to which he has pleaded."

Since we all concede the above to be the rule, let us see of what petitioner was in jeopardy. It is conceded that he was in jeopardy for any crime of which he could have been convicted under the information. What was that? It was any act of rape committed with relation to the female in question any time within two years. Such acts are the basis for the charges upon which the state seeks to try petitioner. The fact that the state elected to rely for conviction on an act performed on a certain date can make no difference. Petitioner was in jeopardy when the jury was sworn to try the case. His status as to subsequent prosecutions was fixed then, not at some later time in the trial. It is to be presumed that if a verdict of not guilty of the offense charged in the present information is returned, and there is some evidence introduced as to an act of rape committed on a day different than the one charged, another information will be filed and so on until prosecution becomes persecution. With the announcing of this decision prosecutors will be quick to file charges on only a part of the state's case. Then if a verdict of not guilty is returned another information will be filed and trial had. Thus, both the letter and the spirit of the constitutional inhibition against double jeopardy will be violated. The idea of the provision in the constitution was to avoid such action as we have in this case. In my opinion the guaranties of personal rights in the constitution should not be lightly snatched away from the citizen to gratify the relentless lust for blood on the part of a prosecutor.

I cannot agree with the attempted distinction of the case of *State v. Rush*, 138 Kan. 465, 26 P. 2d 581, and in my opinion that decision sustains my views.