No. 35,182

JOHN M. CLAFLIN, *Appellee*, v. THE STATE OF KANSAS and CHARLES E. BANNING, Sheriff of Douglas County, *Appellants*.

(119 P. 2d 540)

Opinion filed December 6, 1941.

*Jay S. Parker*, attorney general, *A. B. Mitchell*, assistant attorney general, *Milton P. Beach*, county attorney, and *George K. Melvin*, of Lawrence, for the appellants.

*Edward Rooney*, *Jacob A. Dickinson*, *Edward Rooney, Jr.*, all of Topeka, *Edward T. Riling* and *John J. Riling*, both of Lawrence, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment discharging John M. Claflin from the custody of the sheriff of Douglas county on a writ of habeas corpus.

The correctness of that judgment turns upon the statute enacted in 1935 as a supplement to the provisions of the criminal code relating to jeopardy.   (G. S. 1935, 62-1449.)

The material facts were these:  In the autumn of 1939 John M. Claflin was an undergraduate student at the state university and resided at the house of the Phi Delta Theta college fraternity. Within the space of three weeks four separate attempts were made to destroy that fraternity house by fire—on October 24 a fire was set in a bathroom on the third floor; on October 30 at 1:30 o'clock, a. m., a similar fire was set; on the same day at 6:15 o'clock, p. m., a fire was set to some quiz papers stored in a trunk room in the attic; and on November 12 a lighted cigarette was set in a box of matches placed in a closet containing gymnasium clothes.

On February 23, 1940, a complaint was sworn to by the state fire marshal before a justice of the peace of Douglas county charging John M. Claflin in four separate counts with the crime of arson as indicated above.   Whether a warrant was issued and Claflin arrested thereon does not appear.   Later, on March 18, 1940, the state fire marshal swore to four separate complaints charging Claflin with the crime of arson as indicated above, and on March 26 the first complaint in four counts was dismissed.

On April 13 Claflin appeared before the justice of the peace and waived a preliminary hearing and was bound over to the district court on the four separate charges of arson.   On May 4, 1940, four separate informations were filed against him.   These were identical in every particular except as to dates.   One of these, numbered 3786, in its charging part, reads thus:

"That on or about the 12th day of November, 1939, in the county of Douglas, state of Kansas, the defendant, John M. Claflin then and there being, did then and there willfully, unlawfully and feloniously set fire to and burn and cause to be burned the dwelling house of another, said dwelling house being the Phi Delta Theta fraternity, being located at 1621 Edgehill road, city of Lawrence, said county and state, said dwelling house belonging to and being the property of the Kansas Alpha of the Phi Delta Theta Alumni Corporation.  Contrary to the form of the statute in such cases made and provided and against the peace and dignity of the state of Kansas."

Endorsed on each of the four informations were identical lists of witnesses, nineteen in number.

On June 20, 1940, Claflin was brought to trial before a jury on the information numbered 3786.   The trial lasted five days.

The only material evidence bearing on Claflin's guilt was a pur-

ported confession he had given in a room in the Eldridge Hotel, to which place he was taken by the state fire marshal and several other public officials about 1:30 o'clock in the afternoon of February 20, and subjected to protracted questioning to induce him to confess to the crimes of which he was accused. This ordeal lasted throughout that afternoon and night and until 6 o'clock next morning, a matter of 16½ hours, and culminated in the signing of a statement by Claflin acknowledging that he and he alone had set the four separate fires in the fraternity house on the dates covered in the four complaints, and for one of which offenses as charged in information No. 3786 he was on trial. The statement was in the form of questions propounded by one Spaulding, a detective, and answers by Claflin. It occupies ten printed pages of the abstract; but one Peter Kelly, a district court reporter, who took this examination in shorthand and transcribed it, testified that during the long watches of the night when this examination was going on he, Kelly—

"Went to sleep once; that he had no idea what time he went to sleep, but probably about midnight; that he went to sleep while he was listening; that in the room with Kelly was Mr. Latchem, Mr. Gray, and Mr. Rankin, and that there were two adjoining rooms . . . that but a small portion of the conversation was taken in shorthand and transcribed; that he did not know whether or not it would be as much as five percent; that he, Kelly, was left to his own judgment as to what portions of the conversation to take; . . . that the defendant was quizzed by Latchem, Spaulding and Rankin; . . ."

In the criminal trial, the trial court instructed the jury thus:

"The defendant appears to admit that he signed the admissions or confessions, but he says that the reason he did so was because of threats, intimidation, and coercion on the part of those conducting the examination. He denies the truth of the matters contained in the alleged confession and denies generally the correctness thereof.

"The state fire marshal and those assisting him are perfectly warranted in using such persuasive language as they may have at their command in order *to induce a person to make an admission*, but they are not warranted in using force, intimidation or fear to induce the person under examination to make admissions contrary to his interests. So you have the matter squarely before you as to whether or not the statements and admissions made by Claflin were voluntary on his part. By the term 'voluntary' as here used, I mean that the admissions he made were not the result of threat, intimidation or force, and the fact that the admissions may have been made as the result of persuasion and cajoling does not prevent them from being voluntary. [Italics ours.]

"If you believe that the confession was the result brought about by the use of threats, intimidation or coercion, you should not hesitate to find accordingly and acquit the defendant. On the other hand, if you believe, under the rules I have given you, that the confession was voluntary on the part of the defend-

ant and you are satisfied of his guilt beyond a reasonable doubt, you may convict him accordingly. The burden of proving that the confession was induced by threats and intimidation is not upon the defendant as it is one of the elements in connection with establishing the guilt of the defendant which must be borne by the state."

Following his acquittal on the charge covered by information No. 3786, Claflin brought this proceeding in habeas corpus to secure his unqualified discharge. In his petition he set out the entire history of the antecedent proceeding at great length. The sheriff's return to the writ more briefly recited the history of Claflin's arrest, prosecution and acquittal on the charge covered in information No. 3786, but added that "there is no showing that the defendant, John M. Claflin, has been placed in jeopardy as to the crimes in the informations filed in cases Nos. 3787, 3788 and 3789, and that no adjudication has been had concerning the confession plead in the petition herein."

The cause was submitted to the trial court on the petition and return to the writ. The presiding judge in this habeas corpus proceeding was the same judge who had presided at the trial and acquittal of Claflin in the criminal case, and thus was thoroughly aware of all matters pertinent to the vital matter to be determined, which was whether Claflin was entitled to the protection of the statute of 1935, which reads:

"When one is properly charged in one or more counts of a complaint, indictment, or information with an offense, or offenses, against any of the laws of the state, and upon the trial of the action evidence is admitted of other offenses which might have been included as other counts in the complaint, indictment, or information, or on which the state might have elected to rely in the action then being tried, a conviction or acquittal on the charge, or charges, as made in the complaint, indictment, or information, shall operate as a bar to any subsequent prosecution of the same person in another action for any act or acts for which the state could have asked for a conviction under the complaint, indictment or information in the former trial." (Laws 1935, ch. 163, § 1; G. S. 1935, 62-1449.)

This court has had occasion heretofore to examine this statute. See *State v. Brown*, 146 Kan. 525, 73 P. 2d 19; and *State v. Momb*, 150 Kan. 674, 95 P. 2d 349, overruled in a sequel to the same case, ante, p. 435 (this day decided).

Here the matter to be decided seems to fall precisely under the letter and purpose of the statute of 1935. The offenses charged against Claflin not only *could be* but originally *were* charged in four counts of a single complaint. There was no change in those charges when by a mere strategical maneuver of the prosecution the same

four identical charges were filed against him in four separate complaints and the first complaint dismissed. And certainly there would not have been the slightest difficulty in including all four of the complaints as counts in one information. Moreover, even without the statute of 1935, simple justice to the accused, as well as a decent regard for the taxpayers of Douglas county, should have prompted the state to avoid four lengthy and expensive criminal trials on the four charges so similar in every respect by including them in one information and by putting the accused to the hazard of conviction in one fair trial before a jury and no more. The evidence relied on for conviction in information No. 3786 was the purported confession of Claflin completely covering all four attempts to set fire to the building; and that confession was not more applicable to the offense charged in information No. 3786 than it was to each of the other offenses. The evidence as to the commission of those other offenses did not creep into the case on trial casually or incidentally. It was thoroughly aired in all its details. Indeed, it constituted all the material evidence in the case tried—so much so that the trial court instructed the jury not merely to disregard the confession if they believed defendant was coerced into making it but to acquit him without hesitation. That instruction manifestly was prompted by the fact that the state had no other evidence to produce on which to ask for a conviction.

Furthermore, the circumstances of the four alleged offenses were so similar in every respect that the state's evidence—that is, the confession—if believed to have been obtained voluntarily, would have justified a verdict of guilty whichever one of the four informations, Nos. 3786, 3787, 3788 or 3789, had been used as the basis of the prosecution in the case which was tried. Under our criminal code, when evidence of similar offenses is before the court and jury in a criminal trial, the state may be required to elect on which of them it will rely for conviction, but on the other hand the state is given the privilege of asking a conviction for any offense within the scope of the information which it has proved to have occurred within two years, irrespective of the precise date of the crime charged in the information. (*State v. Lackey,* 72 Kan. 95, 97, 82 Pac. 527; *State v. Pugh,* 75 Kan. 792, 798, 90 Pac. 242.)

We have set out above the trial court's instruction to the jury in the criminal case because of its controlling significance in this case; but this court must not be understood to sanction the practice of

marshals, deputies, policemen or detectives questioning a citizen for 16½ hours "to induce him to make an admission," no matter if they make no threats, or even if they uniformly address him in terms of friendship or benevolence. The constitution of the United States and the constitution of this state both guarantee that no person in any criminal case shall be compelled to be a witness against himself. (U. S. Const., Amend. V; Kansas Bill of Rights, § 10.) When a twenty-one-year-old youth is held in a hotel room for 16½ hours by a number of police officers, each solemnly sworn to support the constitution of the United States and the constitution of the state of Kansas, "to induce him to make an admission," such an act is a form of coercion and grossly offends against the most sacred principles of our American way of life. This state maintains fire marshals, sheriffs and police officers to protect our citizens against lawlessness, not to practice it! (*Crebs v. Amrine*, 153 Kan. 736, 746, 113 P. 2d 1084.)

In the brief of appellant there is an intimation that the state has some evidence available to support a prosecution on each of the three other charges, and would not need to rely on or use the confession discredited in the case already tried. As we have seen, however, the situation falls within the terms of the statute which clearly justified the trial court's judgment.

We have refrained from considering the matter of *res judicata* which is urged in appellee's brief. The doctrine of *res judicata* is scarcely pertinent to matters of criminal procedure and practice. If the petitioner had been forced to trial on one of the other informations his proper practice would have been to file a special plea in bar, based on the protection of the statute of 1935.

The judgment is affirmed.

WEDELL and HOCH, JJ., concur in the result.

THIELE, J., not participating.