No. 42,413

THE STATE OF KANSAS, *Appellee*, v. DANIEL ARMSTRONG LONG, *Appellant*.

(369 P. 2d 247)

Opinion filed March 3, 1962.

*Russell Shultz*, of Wichita, argued the cause, and *Walter A. Sawhill* and *Kenneth C. Kimmel*, both of Wichita, were with him on the brief for the appellant.

*Keith Sanborn*, County Attorney, argued the cause, and *William M. Ferguson*, Attorney General, *Robert Hoffman*, Assistant Attorney General, and *R. K. Hollingsworth*, Deputy County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: Defendant was convicted of kidnapping in the first degree (G. S. 1961 Supp., 21-449) and of murder in the first degree (G. S. 1949, 21-401). He was sentenced to life imprisonment on each charge, the sentences to run consecutively. He has appealed from the denial of his motion for a new trial.

At about 7:30 o'clock on the morning of July 1, 1960, the naked body of a deceased woman, later identified as Lora Guinn, was discovered upon the floor of a kitchen in a vacant farm house located about ten miles northeast of Wichita. The body was lying in a pool of blood and had been stabbed with a sharp instrument fourteen times. Her clothing was hanging on a nearby pipe. Following the discovery of the crime, photographs of the house, the body and the clothing, were published in the Wichita newspapers.

During the month of July, 1960, several girls in Wichita had received lewd letters from the defendant in which he proposed meetings and dates. The girls did not know defendant and the letters were turned over to the police. Defendant had recently served a sentence at the Wichita prison farm as a result of a conviction of driving while intoxicated. On the evening of July 22, 1960, police officers contacted defendant at his home and requested that he accompany them to the police station in connection with matters pertaining to the revocation of his driver's license. They also had in mind to interrogate him concerning the lewd letters he had written to the various girls. He admitted writing the letters and said that he knew other women in the area. The officers then inquired who some of those women might be. The first name mentioned by the defendant was "Lora Guinn." Being possessed of this lead, the officers then secured a picture of Lora Guinn. Defendant identified the picture as being that of the woman he was talking about. The officers then told defendant that they intended to discuss something of a "far more serious nature" and advised him fully as to his constitutional rights in the matter. No threats or promises were made to him and he was advised that he was not required to make any statements. Following further discussion and questioning, defendant then admitted that on the night of June 30, 1960, he saw Lora Guinn at a street corner by a bus stop; that he drove up to her, opened the car door, threatened her with a knife, and pulled her into his car. He then drove to the farm house in question and forced her into the house, all of the time threatening her with

the knife. Once inside the kitchen he disrobed her and forced her to lie on the floor. When he attempted to ravish her she kicked him—which made him "mad." He then stabbed her in various parts of her body with the knife and later returned to his home.

Three sets of officers—the police, sheriff's officers, and those of the Kansas Bureau of Investigation—interviewed and questioned defendant, and on each occasion he admitted the crime. The following morning he was questioned by the county attorney in the presence of officers, and his detailed statement was taken down by a court reporter, following which he was charged with kidnapping in the first degree and murder in the first degree. As previously stated, he was convicted of both charges, and has appealed from the denial of his motion for a new trial.

The first two specifications of error may be considered together. They are that the court erred in refusing the testimony of one of the detectives given at the hearing in the absence of the jury as to the voluntariness of the confession, to be read to the jury, and that the court erred in allowing the confession, either oral or written, to be received in evidence.

In this connection, the record shows that outside the presence of the jury the court conducted a hearing on the question relating to the voluntariness of defendant's confession. Defendant concedes that the trial court followed the law with respect to this matter in every detail, but it is contended there was a variance in the officer's testimony given before the jury and that given by him to the court outside the presence of the jury. An examination of the record discloses this contention is utterly lacking in merit, and defendant was not restricted in his examination or cross-examination of the officer or of any other officer connected with the investigation and interrogation of defendant.

And neither did the court err in allowing the confession to be received in evidence. It was clearly established that defendant had been advised of his constitutional rights, and that his statements in the nature of a confession were not the result of any threats or promises. Some mention is made of the fact of the length of time consumed in the interrogation of defendant. Under the circumstances shown by the record, however, the length of time involved is easily and logically explained, and at no time was defendant "pressured" into talking. Defendant was twenty-nine years old, and while there is evidence to the effect that he was a person

of "rather low mentality," there is absolutely nothing in the record to indicate that his confession was anything other than voluntarily given. The facts and circumstances present in *State v. Oberst*, 127 Kan. 412, 273 Pac. 490; *Claflin v. State*, 154 Kan. 452, 119 P. 2d 540, and *State v. Seward*, 163 Kan. 136, 181 P. 2d 478, opinion on rehearing 164 Kan. 608, 191 P. 2d 743, cited by defendant, are so dissimilar to those before us as to be of no assistance to him. There is no contention that the circumstances in connection with the obtaining of the confession amounted to a denial of due process, and it was not error to admit the same in evidence.

It next is contended that, aside from the confession, there was an utter lack of evidence to establish the *corpus delicti* of the kidnapping charge, and, such being the case, the confession, standing alone, is insufficient to support the conviction of kidnapping, and that defendant is entitled to his discharge as to that offense. The case of *The State v. Cardwell*, 90 Kan. 606, 135 Pac. 597, LRA 1916B 745, is cited, but reference to that case discloses that the requirements to establish the *corpus delicti* were fully met by the evidence in the case before us, not only by circumstantial evidence but from the physical facts. The body of this woman was found in the vacant farm house. Defendant knew how to get there. She had a gag on her mouth and had been stabbed to death. It is unnecessary to use a knife if a person goes willingly, and it also is unnecessary to gag one who goes willingly. As indicated by the Cardwell case, above, the rule is well established that evidence sufficient to corroborate a defendant's extra-judicial confession of a crime may be in the form of circumstantial evidence. The circumstances here, together with the physical facts, considered in connection with defendant's confession, were ample to support the conviction of the kidnapping charge.

It next is contended the court erred in not allowing the testimony of one Madge Pannell to be received and considered upon the hearing of the motion for a new trial. In this connection defendant offered the testimony of this witness to the effect that she had seen Lora Guinn in a tavern in Wichita at approximately 12:30 a. m., on July 1, 1960, in the company of a male person unknown to the witness, but that such male person was not the defendant, and that with due diligence the evidence of this witness was not available at the time of trial because counsel for defendant did not have in his possession, and was unable to obtain, a photograph of Lora

Guinn which could be identified by the witness as being that of the woman she had seen in the tavern about seven hours prior to the discovery of her body. The record of what transpired at the hearing on this matter is not abstracted, but the trial court found that a photograph of Lora Guinn could have been located and therefore could have been available in time to present such evidence at the time of trial—and therefore denied the offer. There is no showing whatever that the court in any way abused its discretion with respect to this matter, and defendant's contention cannot be sustained.

The final specification of error is that the court erred in denying defendant's motion for a new trial on the four grounds heretofore discussed.

Throughout the trial defendant was represented by competent counsel of his own choosing. No contention is made concerning instructions given or refused, and it must be presumed the jury was fully and properly instructed on all matters in issue. Medical evidence was to the effect defendant knew "right from wrong," but that he was perfectly "capable" of committing the offenses. Other than his formal plea of "not guilty," defendant at no time denied the charges, and neither did he repudiate his confession nor deny that it was voluntary. His evidence consisted chiefly of testimony by members of his family in the nature of an alibi, which apparently was completely disbelieved by the jury. Portions of defendant's detailed statement to the interrogating officers, concerning where he had parked his car, and as to the location of doors, and other physical facts concerning the vacant house, were such as to leave absolutely no doubt but that it was he who had been to and gained entry to the house at the time and place in question. A careful examination of the record presented fails to disclose anything approaching prejudicial error. The motion for a new trial was properly denied and the judgment is affirmed.